# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**NATE A. LINDELL,**
        **Plaintiff,**

    **v.**                                **Case No. 18-C-2027**

**ANTHONY MELI, BILL SEARLS,**
**CAPTAIN JOHN O'DONOVAN, and**
**KEVIN A. CARR,**
        **Defendants.**

---

## <u>DECISION AND ORDER</u>

Plaintiff Nate Lindell, an inmate within the Wisconsin Department of Corrections, alleges that staff at the Waupun Correctional Institution violated his constitutional rights after he made a complaint under the institution's procedures for complying with standards promulgated under the Prison Rape Elimination Act ("PREA"). First, Lindell alleges that defendant Anthony Meli, the prison's security director, retaliated against him, in violation of the First Amendment, by writing a conduct report accusing him of filing a PREA complaint that contained a lie about a staff member. Relatedly, Lindell alleges that Bill Searls, the staff member who investigated the PREA complaint, and Captain John O'Donovan, the staff member who found Lindell guilty of lying about staff, retaliated against him for making the PREA complaint. In addition, Lindell contends that the prison did not afford him due process during his disciplinary hearing on the charge of lying about staff. Finally, Lindell seeks injunctive relief that would require the Department of Corrections to strike the discipline he received as a result of the conduct report from his record and to enact procedural safeguards to prevent further retaliatory use of the disciplinary process.

The defendants have filed a motion for summary judgment on the plaintiff's retaliation claims, but they do not seek summary judgment on his due-process claims. The plaintiff filed his own cross-motion for summary judgment on both his retaliation and due-process claims. However, the plaintiff's motion was filed after the deadline for submitting dispositive motions had passed, and the magistrate judge to whom this case was assigned for pretrial purposes denied the plaintiff's motion to extend the deadline. Pursuant to Federal Rule of Civil Procedure 72(a), the plaintiff has filed an objection to the magistrate judge's decision not to compel the defendants to respond to his untimely motion for summary judgment. In the present opinion, I address the defendants' motion for summary judgment, address the plaintiff's objection to the magistrate judge's order, and set deadlines for further proceedings on the due-process claims.

## I. BACKGROUND

The plaintiff was housed at the Waupun Correctional Institution from January 4, 2013 to December 11, 2013. He states that, during his time at the institution, he heard from other inmates that staff followed a practice of performing strip searches and body-cavity searches on inmates. Pl. Prop. Findings of Fact ("PFOF") ¶¶ 19–21. Lindell believed that this practice was improper. On August 24, 2013, he helped a fellow inmate in the segregation unit write a grievance about a staff-assisted strip search. *Id.* ¶ 22. According to Lindell, while he was assisting the inmate, Correctional Officer Derek Schouten (who is not a defendant) "made an aggressive offer to 'take Lindell for a walk.'" *Id.* Because Lindell was in segregation, he was not allowed to go for "walks" and would have had to have been shackled and handcuffed if he was removed from his cell. Based on Schouten's statement and tone, plus Lindell's belief that institution staff "concoct[ed]

2

excuses to do staff-assisted strip searches," Lindell "suspected[ed] that Schouten intended to do an abusive/retaliatory staff-assisted strip search." *Id.* However, Lindell does not allege that Schouten removed him from his cell or performed a strip search. Indeed, Lindell does not allege that Schouten engaged with him further after offering to take him for a "walk."

The plaintiff decided to complain about Schouten under the institution's procedures for complying with the U.S. Department of Justice's standards for the detection, prevention, reduction, and punishment of prison rape, which were issued under the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. §§ 30301–30309. Lindell made his complaint by placing a phone call to the institution's hotline for reporting PREA violations and giving recorded a statement. Lindell Decl. ¶ 23. Lindell contends that, on the recording, he stated that "he was concerned that Schouten intended to abuse his authority by doing a staff-assisted strip search" pursuant to the institution's practice of conducting such searches. *Id.* Two days later, a staff member at the Department of Corrections retrieved the recording and prepared a report containing the following summary of the call: "Inmate claims he had a verbal altercation with a CO Shuter (sp?). Later that night the captain took him out of his cell for no reason and he thinks his intent was to sexually abuse him." ECF No. 105 at p. 23 of 43.

An electronic copy of the report of Lindell's PREA complaint was provided to defendant Meli, among others. *Id.* On August 28, 2013, Meli initiated an investigation into Lindell's complaint. He entered the summary of Lindell's recorded statement into a document initiating the investigation, and thus the document made it appear as though Lindell was alleging that "the captain" intended to take him out of his cell to sexually abuse

3

him. *See* ECF No. 120-1 at p. 12 of 12. PREA Investigators Bill Searls and Ann Turner were assigned to investigate this allegation. They determined that the captain on duty at the time of Lindell's complaint was Captain James Olson. ECF No. 99-6 at 2. Thus, Searls and Turner believed that Lindell's PREA complaint was that Captain Olson had removed him from his cell with the intent to sexually abuse him.

On November 6, 2013, Searls and Turner attempted to interview Lindell about his PREA complaint. They intended to interview him in an area outside of the segregation unit. Under the institution's policies, when an inmate enters or leaves the segregation unit, staff may perform a strip search. *See* Wis. Admin. Code § DOC 306.17(2)(c) (Westlaw 2013 version).[1] Pursuant to this policy, Sergeant Price (who is not a defendant) informed Lindell that he would need to be strip searched before he left his cell to speak with the investigators. Lindell did not want to be strip searched, and so he refused to leave his cell. Searls then went to Lindell's cell to introduce himself and explain why he wanted to speak with him. Lindell contends that he informed Searls that he did not want to be strip searched and asked Searls to interview him at his cell. Searls refused his request and told Lindell that he deemed him to be refusing to be interviewed. Lindell PFOF ¶¶ 33–34. Searls then completed a report stating that Lindell had refused to be interviewed and that his complaint about Captain Olson was unfounded. It stated:

> On 11/06/2013 myself and Inv. Turner attempted to interview inmate Lindell. Inmate Lindell advised Sgt. Price he did not want to be interviewed. I went to inmate Lindell's cell and introduced myself and asked inmate Lindell if he would speak with me. Inmate Lindell asked if he was going to be strip

---

[1] Because the events that gave rise to this suit occurred in 2013, throughout this opinion, I cite to the 2013 version of the Wisconsin Administrative Code as it appears in Westlaw's historical database.

4

search? [sic] Sgt. Price advised that per policy, he would be strip searched. Inmate Lindell then stated he did not want to speak with me. This investigation is concluded and is unfounded.

ECF 120-1 at p. 1 of 12.

Shortly after his interaction with Searls, Lindell made a second PREA complaint, this time complaining about the need to be strip searched in order to be interviewed about his prior complaint. *See* Lindell PFOF ¶ 37; ECF No. 105 at 41 of 43. The summary of the recorded call described Lindell's complaint as follows:

> Inmate stated that the Warden (or who he thinks is the Warden) finally came to speak to him about the incident below [a reference to his first complaint that was believed to be about Captain Olson]. The inmate asked if he would be strip searched before speaking about the complaint. The Warden said yes and ask [sic] Sgt. Price to proceed. At this point, Inmate Lindell stated he didn't think it was fair that he was going to be sexually harassed with a strip search for filing a complaint and refused the search. The Warden waived and walked off.

ECF No. 105 at 41 of 43.

After Searls and Turner filed their report of the investigation, defendant Meli determined that Lindell's original PREA complaint violated a DOC rule prohibiting inmates from lying about staff. This rule made it an offense for an inmate to make "a false written or oral statement about a staff member which may affect the integrity, safety or security of the institution or staff," if the false statement was made outside the complaint review system. *See* Wis. Admin. Code § DOC 303.271. Meli wrote a conduct report charging Lindell with violating this rule. He alleged:

> Information was received that on 8-24-13 Inmate Lindell, Nathaniel #303724 alleged that Capt. Olson took him out of his cell for no reason and that he thinks Capt. Olson's intent was to sexually abuse him. This information was forwarded to the PREA Director and I was later informed

5

that PREA investigators Bill Searls and Ann Turner were assigned to review his allegations.

I was later informed that after looking into the matter it had been determined that the Wisconsin Department of Correction Policies and Procedural Protocols were followed and that this allegation was unfounded. Two separate staff members approached Inmate Lindell to inform him the investigators wanted to interview him regarding his accusation about Capt. Olson. On both occasions it was reported he refused to be interviewed about his allegation. Based on the information provided to me I allege Inmate Lindell is in violation of 303.271 – lying about staff.

ECF No. 121-1 at 1–2.

On November 26, 2013, a disciplinary hearing was held to address the conduct report written by Meli. Prior to the hearing, Lindell asked that Searls be a witness, but the hearing officer, defendant Captain John O'Donovan, denied the request. Pl. PFOF ¶ 57; ECF No. 121-1 at 9 of 13. The reason given for the denial was that the testimony would have been cumulative of other evidence and would have prolonged the hearing. *See* ECF No. 121-1 at 9 of 13 (citing Wis. Admin Code § DOC 303.81(3)(c)). Lindell also requested that the recording of his original PREA complaint be played at the hearing or that a full transcript be provided. *Id.* However, Lindell was informed that a recording of the complaint was unavailable. ECF No. 121-1 at 4 of 13. The recording was unavailable because, due to limitations associated with the phone system, calls to the PREA hotline were deleted after they were retrieved and summarized. *See* ECF No. 99-5 at pp. 32–33 (response to RFA #13), 40 (response to RFA #38); 53 (response to interrogatory #14).

Lindell provided a written statement for Captain O'Donovan to consider at the hearing. *See* ECF No. 121-1 at 7 of 13. In the statement, Lindell said that he never made a complaint against Captain Olson for attempting to sexually abuse him. Instead, he

called in a complaint about C.O. Schouten, whom he suspected of wanting to sexually abuse him, "as [institution] seg[regation] staff commonly do to others." *Id.* at 1. Lindell did not explain that, by "sexual abuse," he meant perform a strip search. Lindell added that he told Searls that he would talk to him about his PREA complaint at his cell front but would not leave his cell to talk to him because Sergeant Price told him that he would be strip searched "before and after such a talk," which Lindell viewed as a "form of harassment" for making PREA complaints. *Id.*

At the disciplinary hearing, defendant Meli and Sergeant Price testified. Captain O'Donovan asked these witnesses questions that Lindell had submitted in writing in advance of the hearing. After the hearing, O'Donovan found it more likely than not that Lindell "communicated a false statement about staff in stating that the captain's intent in taking him out of his cell was to sexually abuse [him]." ECF No. 121-1 at 3 of 13. He also found that the false allegation "affected the staff member's integrity and the security of the institution by alleging sexual abuse against an inmate." *Id.* In his written decision, O'Donovan also addressed Lindell's objection to having to submit to a strip search in order to be interviewed about his PREA complaint. O'Donovan wrote that he was "aware that it is Institution Policy if not [Division of Adult Institutions] policy that anytime an inmate housed in segregation leaves the area and comes back a strip search would be conducted." *Id.* He added:

> It is also reasonable to believe that the investigator would not want to interview the inmate about a PREA complaint on the range, amongst other inmates. Lindell had the chance to meet with the investigators if he choose [sic] to. The inmate does not get to decide where the investigation will occur.

*Id.* For these reasons, O'Donovan found the plaintiff guilty of lying about staff and imposed 360 days of disciplinary separation as punishment.

7

On November 17, 2013, Lindell drafted a grievance about the conduct report and filed it through the Department of Correction's Inmate Complaint Review System ("ICRS"). He alleged that Meli and the others involved in investigating his PREA complaint were retaliating against him for filing a PREA complaint, in violation of the First Amendment. On November 25, 2013, the inmate complaint examiner rejected the grievance on the ground that the issue raised fell outside the scope of the ICRS. The examiner explained that, under ICRS rules, a grievance raising "substantive issues regarding the conduct report" is not a proper grievance. ECF No. 118-2 at 2 of 11. Instead, to raise an issue involving a conduct report, the inmate must file an appeal of the decision imposing discipline to the warden. Once the appeal is exhausted, the inmate may file an inmate complaint that raises "procedurally based allegations of error." *Id.* Lindell filed a timely appeal of the complaint examiner's decision to reject his inmate complaint, but the rejection was sustained. Lindell did not file an appeal of O'Donovan's decision to discipline him for lying about staff. Lindell contends that this was because he never received a copy of O'Donovan's written decision. *See* Pl. PFOF ¶ 15.

On December 27, 2018, Lindell commenced the present action. He originally brought a claim against Meli for retaliating against him for filing the PREA complaint and a claim for an injunction to prevent the Department of Corrections from continuing to use the outcome of Meli's conduct report as a basis for further discipline. I screened the original complaint under 28 U.S.C. § 1915A and allowed Lindell to proceed on his claims. At that point, I referred this case to a magistrate judge for nondispositive pretrial purposes. Later, Lindell filed a motion to amend his complaint to include claims against Searls and O'Donovan. In the amended complaint, Lindell alleged that Searls and O'Donovan also

8

engaged in prohibited retaliation during the investigation of his PREA claim and the disciplinary hearing, respectively. He also alleged that Meli and O'Donovan deprived him of due process during the disciplinary hearing. On June 13, 2019, the magistrate judge screened this amended complaint and allowed Lindell to proceed "on retaliation claims against Meli, O'Donovan and Searls" and on "due process claims against Meli and O'Donovan." ECF No. 36 at 6.

On May 12, 2020, Lindell sought leave to file a second amended complaint. Mostly, the proposed amended complaint only added allegations to Lindell's existing claims; it did not add new parties or claims. However, Lindell arguably added a new claim by alleging that Searls engaged in prohibited retaliation when he insisted that Lindell leave his cell to be interviewed, which would necessitate a strip search. *See* Second Am. Compl. ¶ 17-A4. The magistrate judge granted the motion to amend and made the second amended complaint the operative complaint in this action. *See* ECF No. 104.

After several extensions, the dispositive motion deadline for this case became September 14, 2020. *See* ECF No. 95. The defendants filed their motion for summary judgment on August 12, 2020, which is directed to the plaintiff's retaliation claims against Meli, O'Donovan, and Searls. The defendants have not sought summary judgment on the plaintiff's due-process claims against Meli and O'Donovan. This is so because the defendants believe that until such claims are screened by a district judge, the plaintiff is not entitled to proceed on them. *See* Reply Br. at 4; ECF No. 148. As for the claims on which the defendants have moved for summary judgment, they advance three arguments. First, they contend that the plaintiff did not properly exhaust his administrative remedies before suing, as required by 42 U.S.C. § 1997e(a). Second, they contend that under no

9

reasonable view of the evidence could the defendants be found liable for First Amendment retaliation. Finally, the defendants contend that they are entitled to qualified immunity, which would apply to the plaintiff's claims for damages (but not his claim for injunctive relief).

Lindell requested several extensions of the deadline for responding to the defendants' motion, and eventually his response brief was due on October 20, 2020. On October 6, 2020, Lindell filed a motion to extend the dispositive motion deadline (which was September 4, 2020) to allow him to file his own motion for summary judgment. The magistrate judge denied the motion on the ground that Lindell had waited until after the deadline had passed to seek the extension and had not shown excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B); ECF No. 140.

On October 19, 2020, the plaintiff filed a timely response to the defendants' motion for summary judgment and an untimely cross-motion for summary judgment. In November 2020, the plaintiff filed, among other motions, a motion to compel the defendants to respond to his improperly filed motion for summary judgment. On December 3, 2020, the magistrate judge denied this motion. He explained that the plaintiff's own motion for summary judgment was untimely and that therefore the court would not order the defendants to respond. *See* ECF No. 155. The plaintiff has objected to the magistrate judge's refusal to compel the defendants to respond to his untimely motion for summary judgment. The plaintiff contends that because the defendants moved for summary judgment before the deadline to do so expired, they opened the door to his filing an untimely motion for summary judgment.

10

## II. DISCUSSION

### A.     Objection to Magistrate Judge's Order

As noted, the plaintiff objects to the magistrate judge's refusal to compel the defendants to respond to his untimely[2] cross-motion for summary judgment. He contends that when the defendants filed their own motion for summary judgment, they exposed themselves to having summary judgment entered against them. *See* ECF No. 156. What the plaintiff seems to be referring to is the rule that a court may grant summary judgment to a nonmovant after giving notice and a reasonable opportunity to be heard. *See* Fed. R. Civ. P. 56(f)(1). But this rule only allows the court to act on its own motion (also known as *sua sponte*); it does not grant the nonmovant a right to file his own motion for summary judgment after the expiration of the dispositive motion deadline. Thus, the magistrate judge was clearly correct in denying the plaintiff's motion to compel the defendants to respond to his untimely motion for summary judgment. I will overrule the objection.

However, as I explain below, the plaintiff's due-process claims are properly part of this case, and I believe it makes sense to allow the parties to address those claims through a round of summary-judgment briefing, for it would be wasteful to spend resources on a full jury trial if the claims may be resolved on summary judgment. Thus, I will grant both parties leave to file motions for summary judgment on the plaintiff's due-process claims.

---

[2] The plaintiff did not file a timely objection to the magistrate judge's order denying his request for an extension of the dispositive motion deadline. Thus, I do not review whether the magistrate judge's refusal to extend the deadline was correct.

11

**B.     Defendants' Motion for Summary Judgment on Retaliation Claims**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

**1.     Exhaustion**

The Prison Litigation Reform Act ("PLRA") provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The objective of § 1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects inmates to adhere to "the specific procedures and deadlines" established by the institution's policy. *Dole*, 438 F.3d at 809; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative

12

defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

In Wisconsin, the Inmate Complaint Review System ("ICRS") provides administrative remedies to inmates. *See* Wis. Admin. Code § DOC 310.01 (Westlaw 2013 version). In general, an inmate may use the ICRS "to raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." *Id.* § DOC 310.08(1). However, the ICRS may not be used to complain about "[a]ny issue related to a conduct report" unless the inmate has first exhausted the disciplinary process. *Id.* § DOC 310.08(2)(a). But if the inmate has exhausted the disciplinary process, he may use the ICRS "to challenge *only* the procedure used in . . . the disciplinary process." *Id.* § DOC 310.08(3) (emphasis added).

In the present case, the defendants contend that the plaintiff failed to properly exhaust his claim that the defendants issued and/or sustained the conduct report accusing him of lying about staff in retaliation for his having filed a PREA complaint. They concede that he filed an inmate complaint on this issue, but they contend that it was not properly filed because it was filed before an appeal of the underlying conduct report was exhausted. The defendants contend that, to properly exhaust this claim, the plaintiff was required to file a new inmate complaint after the appeal process was over.

It is true that the inmate complaint Lindell filed in November 2013 was rejected as outside the scope of the ICRS because it related to a pending conduct report. However, the defendants have not identified an ICRS rule that would have permitted Lindell to submit a complaint alleging retaliation after he exhausted the disciplinary process. As

13

noted above, the administrative rule governing the scope of the ICRS states that, after the disciplinary process is exhausted, the inmate may file an inmate complaint concerning a conduct report, but only if the conduct report concerns "the procedure used . . . in the disciplinary process." Wis. Admin Code § DOC 310.08(3). Lindell's retaliation claim did not concern the procedure used in the disciplinary process. Instead, it concerned Meli's decision to initiate the process for allegedly retaliatory reasons, O'Donovan's finding him guilty for allegedly retaliatory reasons, and Searls's conduct in investigating the PREA complaint. Thus, the defendants have not shown that the ICRS was an administrative remedy that was "available" to Lindell for exhausting his retaliation claims. I therefore cannot grant summary judgment on those claims based on the affirmative defense of lack of exhaustion.

### 2.   Merits of Retaliation Claims

To establish a prima facie case of unlawful retaliation,[3] a plaintiff must show: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action*. E.g. Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). The parties agree that filing a PREA complaint is activity protected by the First Amendment and that the conduct report and resulting discipline had the deterrent effect necessary to satisfy the second element of the prima facie case. The dispositive question is whether the First Amendment

---

[3] If the plaintiff establishes a prime facie case, a burden-shifting approach is applied. *See, e.g., Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). But because I determine that the plaintiff has not made out a prima facie case, I will not further discuss the burdens that each party must carry once the plaintiff establishes a prima facie case.

14

activity was at least a motivating factor in Meli's decision to write the conduct report and O'Donovan's decision to find the plaintiff guilty. (I will address the retaliation claim against Searls separately.)

Here, there is no doubt that Meli and O'Donovan took their punitive actions in response to the plaintiff's PREA complaint. However, this does not mean that the plaintiff has made out a prima facie case. That is so because the defendants claimed to have acted based on their belief that the PREA complaint contained a lie about a staff member. Any lie that Lindell included in his PREA complaint would not have been protected by the First Amendment, for the First Amendment does not grant a person the right to make knowingly false claims. *See Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (holding that if prison officials punished an inmate "not because he tried to exercise free speech but because his accusation was a lie," then officials could not be liable for First Amendment retaliation); *Smock v. Nolan*, 361 F.3d 367, 371 (7th Cir. 2004) (noting that lies are not constitutionally protected). Thus, unless the evidence would allow a reasonable jury to find that the defendants did not believe that the plaintiff had lied in his PREA complaint, Meli and O'Donovan would be entitled to summary judgment.

Initially, I must identify the statement that the defendants believed was a lie. The plaintiff seems to think that the defendants accused him of lying because they construed his complaint as being against Captain Olson rather than C.O. Schouten. However, while it is true that the defendants believed that the plaintiff had complained about Olson rather than Schouten, they did not base their actions solely on the distinction between Olson and Schouten. Rather, the gist of the conduct report and resulting discipline was their belief that the plaintiff had falsely alleged that a staff member had removed him from his

15

cell with the intent to sexually abuse him. In his conduct report, Meli identified the plaintiff's allegation about being removed from his cell to be sexually abused as the lie. *See* ECF No. 121-1 at 1. And in his written statement of his reasons for imposing discipline, O'Donovan identified the false statement as the accusation that "a captain's intent in taking him out of a cell was to sexually abuse this inmate." ECF No. 121-1 at 3. Neither Meli nor O'Donovan gave any indication that, had they understood Lindell to be accusing Schouten rather than Olson of taking him out of his cell for the purpose of sexually abusing him, they would have concluded that he had been truthful. Thus, it was the allegation of an intent to commit sexual abuse, not merely the identity of the alleged abuser, that Meli and O'Donovan claimed was a lie.

The next question is whether the evidence in the record could permit a reasonable jury to find that Meli and O'Donovan did not actually believe that Lindell had lied and that, instead, they disciplined him for filing what they knew was a truthful PREA complaint. I begin with Meli. At the time he wrote the conduct report, he believed, based on the summary of the recorded call, that the plaintiff had accused a staff member of removing him from his cell with intent to sexually abuse him. *See* ECF No. 105 at 23 of 43. He then learned from Searls' report that Lindell had refused to be interviewed about his allegations.[4] *See* ECF No. 120-1 at 1. Based on these facts, Meli concluded that the allegation of an intent to commit sexual abuse was a lie. The plaintiff points to no evidence suggesting that Meli did not actually form these conclusions based on the available

---

[4] I understand that the plaintiff believes that Searls did not accurately describe what had occurred when he attempted to interview him. But there is no evidence in the record indicating that, at the time Meli wrote the conduct report, he was aware that Searls did not accurately describe the encounter.

16

evidence and that he instead wrote the conduct report to punish the plaintiff for filing what Meli knew was a truthful PREA complaint. Accordingly, a reasonable jury could not find that Meli had an impermissible retaliatory motive, and Meli is entitled to summary judgment on the retaliation claim.

Turning to O'Donovan, he disciplined the plaintiff after holding a hearing, during which the plaintiff did not present evidence suggesting that either Olson or Schouten had removed him from his cell in order to sexually abuse him. And the federal record contains no evidence that would support a reasonable claim that any staff member attempted to commit sexual abuse. As discussed in the background section, Lindell filed his PREA complaint based solely on C.O. Schouten's angrily asking Lindell if he wanted to go for a "walk." *See* Pl. PFOF ¶ 22. Lindell does not allege that Schouten took any further action based on this threat, and he does not allege that Schouten expressed a desire to make sexual contact with Lindell or obtain sexual gratification from any interaction with Lindell. Lindell seems to have filed the PREA complaint because he believed that Schouten intended to have him strip searched pursuant to the institution's policy of performing strip searches when inmates in segregation are removed from the unit. Wis. Admin. Code § DOC 306.17(2)(c) (Westlaw 2013 version). But this belief was unfounded for two reasons. First, the conduct Lindell ascribes to Schouten does not reasonably suggest that he intended to have him strip searched. Under Lindell's version of events, Schouten only threatened to take Lindell for a "walk"; he did not actually attempt to remove Lindell from the segregation unit (or even from his cell). Second, a strip search performed in the course of an officer's official duties is not sexual abuse under the PREA standards. Those standards do not define strip searches as sexual abuse; in fact, the standards deem them

17

permissible if they are performed by members of the same gender. *See* 28 U.S.C. § 115.15(a). Further, while the standards prohibit voyeurism, the definition of voyeurism excludes viewing an undressed inmate for reasons related to official duties. *Id.* § 115.6. A strip search performed pursuant to an institution's policy of performing them when an inmate is moved into or out of the segregation unit would clearly be related to official duties and therefore not voyeurism.

Because the plaintiff's PREA complaint so clearly lacked merit, O'Donovan's decision to find him guilty of lying about staff was objectively reasonable. Further, the plaintiff points to no evidence suggesting that O'Donovan actually believed the plaintiff had told the truth in his complaint and that he found him guilty of lying because he wanted to retaliate against him for filing a legitimate PREA complaint. Accordingly, a reasonable jury could not find that O'Donovan had an impermissible retaliatory motive, and O'Donovan is entitled to summary judgment on the retaliation claim.

The remaining retaliation claim involves Searls's insisting that Lindell leave the segregation unit and be strip searched before Searls would interview him about his PREA complaint. The plaintiff contends that Searls intended to deter him from filing PREA complaints by insisting that he be interviewed outside the segregation unit rather than at his cell, thus forcing him to endure the strip search that, pursuant to official policy, would have been performed upon his removal from the unit. But the plaintiff points to no evidence suggesting that Searls had this intent. It is true that Searls insisted on an interview away from the plaintiff's cell, but there is no evidence that he did this to deter the plaintiff from filing PREA complaints. The plaintiff seems to think that he had a right to be interviewed at his cell because he agreed to waive confidentiality and allow nearby

18

inmates and staff members to overhear his allegations. *See* Pl. PFOF ¶ 34. But the plaintiff was not the only party entitled to confidentiality. The plaintiff was accusing a staff member of sexual misconduct; discussing those allegations in front of other inmates would have implicated the staff member's privacy, too. Further, until Searls interviewed the plaintiff, he would not have known whether his investigation might require him to interview the other inmates and staff members who were within earshot of the plaintiff's cell. Searls could have been concerned that interviewing the plaintiff at his cell might taint the statements he received during the potential subsequent interviews. Thus, Searls had objectively legitimate reasons for insisting that the plaintiff leave his cell to be interviewed. And because it was institution policy to strip search an inmate following their removal or return to the segregation unit, Searls could not be accused of having singled the plaintiff out for a strip search in order to retaliate against him for having filed a PREA complaint. Thus, the plaintiff has produced no evidence that Searls acted with a retaliatory motive, and Searls is entitled to summary judgment.

For the above reasons, I will grant summary judgment on the plaintiff's retaliation claims against Meli, O'Donovan, and Searls.[5]

## C. Further Proceedings on Due Process Claims

As noted, the defendants have not filed a motion for summary judgment on the plaintiff's due-process claims against Meli and O'Donovan. This is apparently because they believe that the magistrate judge did not screen those claims as required by 28

---

[5] Because the defendants are entitled to summary judgment on the ground that a reasonable jury could not find that they acted with retaliatory motives, I do not separately consider their argument that they are entitled to qualified immunity.

U.S.C. § 1915A. *See* Reply Br. at 4. However, the defendants overlook the magistrate judge's order of June 13, 2019, in which he explicitly screened the first amended complaint and allowed the plaintiff to proceed on due-process claims against Meli and O'Donovan. *See* ECF No. 36 at 4–6.[6] The defendants also argue that, in cases in which not all parties have consented to the magistrate judge's jurisdiction, a magistrate judge cannot screen an amended complaint under § 1915A. I am not sure that the defendants are correct on that point, but even assuming that they are, I would treat the magistrate judge's screening order as a report and recommendation and would adopt it as my own order. *See Coleman v. Labor and Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 475 (7th Cir. 2017). So the due-process claims are now unquestionably part of this case. To be clear, I understand the plaintiff's due-process claims to consist of the following: (1) he was not afforded an opportunity to present all the testimony and documentary evidence he wished to present at the hearing, (2) O'Donovan was not an impartial decisionmaker, (3) O'Donovan's decision was not supported by "some evidence," and (4) the plaintiff did not receive a written explanation for the discipline. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (summarizing due-process rights that apply in the prison disciplinary context).

Based on the plaintiff's proposed findings of fact and the defendants' responses thereto, it appears that many of the facts relating to the due-process claims (namely, the facts concerning what occurred or did not occur during the disciplinary hearing and shortly

---

[6] The magistrate judge later granted the plaintiff leave to file the second amended complaint, which merely perpetuated the existing due-process claims against Meli and O'Donovan. *See* ECF No. 104. Because the second amended complaint did not include new claims, the magistrate judge did not explicitly screen it.

thereafter) are undisputed, and that the only questions will be whether, under those facts, the plaintiff was deprived of due process. Thus, the due-process claims likely will not require a jury trial and could be resolved through motions for summary judgment.[7] I will therefore grant the parties leave to file cross-motions for summary judgment on those claims.

The plaintiff has already filed a motion for summary judgment on these claims, which was untimely but which I will now grant leave to file. The defendants should file a response to this motion and, if they so choose, their own cross-motion for summary judgment on the due-process claims with a supporting brief, proposed findings of fact, and any necessary supporting papers such as affidavits. The plaintiff may then file a combined response to the defendants' motion and reply in support of his own motion. The defendants may then file a reply in support of their cross-motion.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for partial summary judgment (ECF No. 115) is **GRANTED**. The plaintiff's retaliation claims against defendants Meli, Searls, and O'Donovan are **DISMISSED**. Defendant Searls is **DISMISSED**. The following claims remain: (1) due process claims against Meli and O'Donovan, and (2) claim for injunctive relief against the Secretary of the Department of Corrections.

---

[7] Indeed, given my conclusion in this order that O'Donovan's finding of guilt was proper in light of the evidence presented at the disciplinary hearing, the outcome of the plaintiff's claim that the discipline was not based on "some evidence" is likely a foregone conclusion.

**IT IS FURTHER ORDERED** that parties are granted leave to file cross-motions for summary judgment on the plaintiff's due-process claims. Defendants shall file a response to the plaintiff's motion for summary judgment and may cross-move for summary judgment on or before **April 12, 2021**. The plaintiff shall then have 30 days to file a combined response to the defendants' motion and reply in support of his own. If the defendants filed a cross-motion for summary judgment, they shall have 15 days after the plaintiff files his response to file their reply.

**FINALLY, IT IS ORDERED** that the plaintiff's objections to Magistrate Judge Duffin's December 3, 2020 order are **OVERRULED**.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2021.


s/Lynn Adelman
LYNN ADELMAN
United States District Judge

22