# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NATE A. LINDELL,**
    **Plaintiff,**

v.                                                 Case No. 18-C-2027

**ANTHONY MELI, BILL SEARLS,**
**CAPTAIN JOHN O'DONOVAN,**
**and KEVIN CARR,**
    **Defendants.**

## DECISION AND ORDER

Plaintiff Nate Lindell, an inmate within the Wisconsin Department of Corrections ("DOC"), alleges that staff at the Waupun Correctional Institution violated his constitutional rights after he made a complaint under the institution's procedures for complying with standards promulgated under the Prison Rape Elimination Act ("PREA"). Lindell alleges that Anthony Meli and Captain John O'Donovan did not afford him due process during his disciplinary hearing on a conduct report that accused him of lying about staff. Specifically, Lindell alleges that: (1) he was not afforded an opportunity to present all the testimony and documentary evidence he wished to present at the hearing, (2) O'Donovan was not an impartial decisionmaker, (3) O'Donovan's decision was not supported by "some evidence," and (4) Lindell did not receive a written explanation for the discipline. The plaintiff requests damages and injunctive relief. Before me now are the parties' cross-motions for summary judgment on the due-process claims.

### I. BACKGROUND

Lindell was housed at the Waupun Correctional Institution from January 4, 2013 to December 11, 2013. He states that, during his time at the institution, he heard from other

inmates that staff followed a practice of performing strip searches and body-cavity searches on inmates. Pl. Prop. Findings of Fact ("PFOF") ¶¶ 19–21. Lindell believed that this practice was improper. On August 24, 2013, he helped a fellow inmate in the segregation unit write a grievance about a staff-assisted strip search. *Id.* ¶ 22. According to Lindell, while he was assisting the inmate, Correctional Officer Derek Schouten (who is not a defendant) "made an aggressive offer to 'take Lindell for a walk.'" *Id.* Because Lindell was in segregation, he was not allowed to go for "walks" and would have had to have been shackled and handcuffed if he was removed from his cell. Based on Schouten's statement and tone, plus Lindell's belief that institution staff "concoct[ed] excuses to do staff-assisted strip searches," Lindell "suspected[ed] that Schouten intended to do an abusive/retaliatory staff-assisted strip search." *Id.* However, Lindell does not allege that Schouten removed him from his cell or performed a strip search. Indeed, Lindell does not allege that Schouten engaged with him further after offering to take him for a "walk."

Lindell decided to complain about Schouten under the institution's procedures for complying with the U.S. Department of Justice's standards for the detection, prevention, reduction, and punishment of prison rape, which were issued under the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. §§ 30301–30309. Lindell made his complaint by placing a phone call to the institution's hotline for reporting PREA violations and giving a recorded statement. Pl. PFOF ¶ 23. Lindell contends that, on the recording, he stated that "he was concerned that Schouten intended to abuse his authority by doing a staff-assisted strip search" pursuant to the institution's practice of conducting such searches. *Id.* Two days later, a DOC staff member, Teri Nelson, retrieved the recording and

2


Case 2:18-cv-02027-LA   Filed 08/04/21   Page 2 of 16   Document 169

prepared a report containing the following summary of the call: "Inmate claims he had a verbal altercation with a CO Shuter (sp?). Later that night the captain took him out of his cell for no reason and he thinks his intent was to sexually abuse him." ECF No. 105 at p. 23 of 43.

An electronic copy of the report of Lindell's PREA complaint was provided to defendant Meli, among others. *Id.* On August 28, 2013, Meli initiated an investigation into Lindell's complaint. He entered the summary of Lindell's recorded statement into a document initiating the investigation, and thus the document made it appear as though Lindell was alleging that "the captain" intended to take him out of his cell to sexually abuse him. *See* ECF No. 120-1 at p. 12 of 12. PREA Investigators Bill Searls and Ann Turner were assigned to investigate this allegation. They determined that the captain on duty at the time of Lindell's complaint was Captain James Olson. ECF No. 99-6 at 2. Thus, Searls and Turner believed that Lindell was alleging that Captain Olson had removed him from his cell with the intent to sexually abuse him.

On November 6, 2013, Searls and Turner attempted to interview Lindell about his PREA complaint. They intended to interview him in an area outside of the segregation unit. Under the institution's policies, when an inmate enters or leaves the segregation unit, staff may perform a strip search. *See* Wis. Admin. Code § DOC 306.17(2)(c) (Westlaw 2013 version).[1] Pursuant to this policy, Sergeant Price (who is not a defendant) informed Lindell that he would need to be strip searched before he left his cell to speak with the

---

[1] Because the events that gave rise to this suit occurred in 2013, throughout this opinion, I cite to the 2013 version of the Wisconsin Administrative Code as it appears in Westlaw's historical database.

3

Case 2:18-cv-02027-LA   Filed 08/04/21   Page 3 of 16   Document 169

investigators. Lindell did not want to be strip searched, and so he refused to leave his cell. Searls then went to Lindell's cell to introduce himself and explain why he wanted to speak with him. Lindell contends that he informed Searls that he did not want to be strip searched and asked Searls to interview him at his cell. Searls refused his request and told Lindell that he deemed him to be refusing to be interviewed. Pl. PFOF ¶¶ 33–34. Searls then completed a report stating that Lindell had refused to be interviewed and that his complaint about Captain Olson was unfounded. It stated:

> On 11/06/2013 myself and Inv. Turner attempted to interview inmate Lindell. Inmate Lindell advised Sgt. Price he did not want to be interviewed. I went to inmate Lindell's cell and introduced myself and asked inmate Lindell if he would speak with me. Inmate Lindell asked if he was going to be stripsearch? [sic] Sgt. Price advised that per policy, he would be strip searched. Inmate Lindell then stated he did not want to speak with me. This investigation is concluded and is unfounded.

ECF 120-1 at p. 1 of 12.

After Searls and Turner filed their report of the investigation, defendant Meli determined that Lindell's PREA complaint violated a DOC rule prohibiting inmates from lying about staff. This rule made it an offense for an inmate to make "a false written or oral statement about a staff member which may affect the integrity, safety or security of the institution or staff," if the false statement was made outside the complaint review system. *See* Wis. Admin. Code § DOC 303.271 (2013). Meli wrote a conduct report charging Lindell with violating this rule. He alleged:

> Information was received that on 8-24-13 Inmate Lindell, Nathaniel #303724 alleged that Capt. Olson took him out of his cell for no reason and that he thinks Capt. Olson's intent was to sexually abuse him. This information was forwarded to the PREA Director and I was later informed that PREA investigators Bill Searls and Ann Turner were assigned to review his allegations.

4

> I was later informed that after looking into the matter it had been determined that the Wisconsin Department of Correction Policies and Procedural Protocols were followed and that this allegation was unfounded. Two separate staff members approached Inmate Lindell to inform him the investigators wanted to interview him regarding his accusation about Capt. Olson. On both occasions it was reported he refused to be interviewed about his allegation. Based on the information provided to me I allege Inmate Lindell is in violation of 303.271 – lying about staff.

ECF No. 121-1 at pp. 1–2.

On November 26, 2013, a disciplinary hearing was held to address the conduct report written by Meli. Prior to the hearing, Lindell asked that Searls be a witness, but the hearing officer, defendant Captain John O'Donovan, denied the request. Pl. PFOF ¶ 57; ECF No. 121-1 at p. 9 of 13. The reason given for the denial was that the testimony would have been cumulative of other evidence and would have prolonged the hearing. *See* ECF No. 121-1 at p. 9 of 13 (citing Wis. Admin Code § DOC 303.81(3)(c)). Lindell also requested that the recording of his original PREA complaint be played at the hearing or that a full transcript be provided. *Id.* However, Lindell was informed that a recording of the complaint was unavailable. ECF No. 121-1 at p. 4 of 13. The recording was unavailable because, due to limitations associated with the phone system, calls to the PREA hotline were deleted after they were retrieved and summarized. *See* ECF No. 99-5 at pp. 32–33 (response to RFA #13), 40 (response to RFA #38); 53 (response to interrogatory #14).

Lindell provided a written statement for Captain O'Donovan to consider at the hearing. *See* ECF No. 121-1 at p. 7 of 13. In the statement, Lindell said that he never made a complaint against Captain Olson for attempting to sexually abuse him. Instead, he called in a complaint about C.O. Schouten, whom he suspected of wanting to sexually abuse him, "as [institution] seg[regation] staff commonly do to others." *Id.* Lindell did not

5

explain that, by "sexual abuse," he meant perform a strip search. Lindell added that he told Searls that he would talk to him about his PREA complaint at his cell front but would not leave his cell to talk to him because Sergeant Price told him that he would be strip searched "before and after such a talk," which Lindell viewed as a "form of harassment" for making PREA complaints. *Id.*

At the disciplinary hearing, defendant Meli and Sergeant Price testified. Captain O'Donovan asked these witnesses questions that Lindell had submitted in writing in advance of the hearing. After the hearing, O'Donovan found it more likely than not that Lindell had "communicated a false statement about staff in stating that the captain's intent in taking him out of his cell was to sexually abuse [him]." ECF No. 121-1 at p. 3 of 13. He also found that the false allegation "affected the staff member's integrity and the security of the institution by alleging sexual abuse against an inmate." *Id.* In his written decision, O'Donovan also addressed Lindell's objection to having to submit to a strip search in order to be interviewed about his PREA complaint. O'Donovan wrote that he was "aware that it is Institution Policy if not [Division of Adult Institutions] policy that anytime an inmate housed in segregation leaves the area and comes back a strip search would be conducted." *Id.* He added:

> It is also reasonable to believe that the investigator would not want to interview the inmate about a PREA complaint on the range, amongst other inmates. Lindell had the chance to meet with the investigators if he choose [sic] to. The inmate does not get to decide where the investigation will occur.

*Id.* For these reasons, O'Donovan found Lindell guilty of lying about staff and imposed 360 days of disciplinary separation as punishment.

Lindell contends that he did not receive a copy of O'Donovan's written decision immediately after he was found guilty. Pl. PFOF ¶ 15. O'Donovan found Lindell guilty on November 26, 2013, and his written opinion bears that date. *See* ECF No. 1004-001 to 1004-003. The defendants contend that providing a copy of the written decision was not part of their job duties. ECF No. 99-5 at p. 40 of 59 (response to RFA #39). Instead, they state, clerical staff should have served the decision on Lindell. The defendants state that they are "aware" that "there was a clerical error and Lindell did not receive a copy of his conduct report decision." *Id.* Lindell states that, despite not having been given a copy of O'Donovan's decision, he submitted an appeal to Waupun's warden, but he never received a decision on the appeal. Pl. PFOF ¶¶ 13, 15. The defendants contend that, during discovery in this case, they served a copy of O'Donovan's decision on Lindell, and that Lindell could have filed an internal appeal within ten days of such service. *See* Defs.' Resp. to Pl. PFOF ¶ 15.

On March 12, 2021, I granted the defendants' motion for summary judgment as to Lindell's retaliation claims against Searls, Meli, and O'Donovan related to the investigation of Lindell's PREA complaints, conduct report, and disciplinary hearing. ECF No. 158 at 15-19. Because Lindell's due-process claim was not fully briefed when I resolved the retaliation claims, I directed the defendants to file a response to Lindell's motion for summary judgment and allowed them to cross-move for summary judgment as to the due-process claim. On March 19, 2021, the defendants filed a joint supplemental motion for summary judgment and response to Lindell's motion for summary judgment. ECF Nos. 159, 160. On April 12, 2021, Lindell filed a joint response to the defendants' supplemental summary judgment motion and reply in support of his own motion. ECF No.

7

163. Two days later, the defendants filed their summary judgment reply. ECF No. 164. Lindell subsequently filed a motion for leave to file a sur-resply along with a proposed sur-reply regarding his due-process claim. ECF Nos. 166, 166-1. The defendants have not opposed this motion, and in the interest of justice, I will allow it.

I also note that the plaintiff has filed a motion to "clarify" the issues to be decided in the pending motions for summary judgment. *See* ECF No. 167. I will deny this motion on the ground that there is no such relief available under the Federal Rules of Civil Procedure.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A prisoner challenging the process he was afforded in a prison disciplinary proceeding must demonstrate two elements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)). Once a liberty or property interest has been identified, the court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty-four hours prior to the hearing; (2)

8

the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *see also Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted).

In their motion for summary judgment, the defendants do not dispute that O'Donovan's finding Lindell guilty of lying about staff resulted in a deprivation of liberty. However, in a footnote in their reply brief, they note that Lindell was transferred out of DOC custody only two weeks after he began serving his disciplinary sentence. ECF No. 165 at 3 n.2. They then note that such a short stint in segregation does not implicate a liberty interest. *Id.* But Lindell contends that, when he returned to the DOC, the finding of guilt resulted in his remaining in restricted custody for over three years. *See* Pl. PFOF ¶ 70. The defendants have not argued that Lindell's evidence fails to create a genuine factual dispute over whether the discipline imposed for lying about staff was the but-for cause of the restricted-custody classification or whether the custody was sufficiently restrictive and lengthy to implicate a liberty interest. Thus, for purposes of summary judgment, I assume that the finding of guilt resulted in a deprivation of liberty.

Lindell contends that Meli and O'Donovan violated his due process rights in "at least four ways[.]" ECF No. 143 at p. 19. First, he contends that the finding of guilt was not supported by some evidence because there was no evidence that he made a PREA

9

complaint about Captain Olson. However, when Teri Nelson, the DOC staff member who retrieved Lindell's call to the PREA hotline, summarized the contents of the call, she wrote that he had reported that "the captain" took him out of his cell with the intent to sexually abuse him. ECF No. 120-1 at 11 of 12. DOC records indicated that the captain on duty at the relevant time was Captain Olson. The summary of the PREA call, which Meli described during the hearing, combined with the evidence that the captain on duty was Olson, provided at least some evidence that Lindell had complained about Captain Olson.[2] At the hearing, Lindell claimed that he had called in a complaint about C.O. Schouten rather than Captain Olson, but O'Donovan credited the summary of the PREA call over Lindell's testimony. Due process did not require O'Donovan to credit Lindell's testimony or conclude that the summary of the PREA call was inaccurate. Accordingly, O'Donovan's conclusion that Lindell had complained about Captain Olson was supported by some evidence.

Lindell also contends that the DOC presented no evidence at the hearing showing that Olson had not removed him from his cell with the intent to sexually abuse him. But Lindell's testimony that he had complained about Schouten rather than Olson was some evidence that Olson never committed the acts described in the PREA complaint. In other words, because Lindell essentially withdrew his allegations against Olson at the hearing, O'Donovan could have rationally found that Olson did not attempt to commit sexual abuse. Further, as I noted in my summary-judgment decision on Lindell's retaliation

---

[2] In his briefs, Lindell contends that Meli's testimony about the contents of his PREA complaint was hearsay. However, due process does not require the exclusion of hearsay evidence during a prison disciplinary hearing. *See Crawford v. Littlejohn*, 963 F.3d 681, 683 (7th Cir. 2020).

claims, Lindell presented no evidence supporting a claim that any staff member had attempted to remove him from his cell to commit sexual abuse. *See* ECF No. 158 at 17–18. Lindell contends that it was the DOC's burden to show that a staff member had *not* attempted to sexually abuse him, rather than his burden to show that one did. *See* ECF No. 166-1 at 2. While this is true, Lindell's failure to provide any support for his claim was itself evidence that the claim was false. A factfinder could rationally believe that an inmate who makes allegations of sexual abuse against a staff member and then fails to provide testimony supporting the allegations had lied about the staff member. Moreover, Lindell did not just fail to present evidence of attempted sexual abuse at the hearing; he also refused to be interviewed about his allegations when the PREA investigators arrived at his cell. Lindell testified that he refused to be interviewed because he did not want to be strip searched before leaving his cell, but O'Donovan could have inferred that, if Lindell's allegations of attempted sexual abuse were true, he would have complied with the institution's strip-search policy and submitted to an interview. Thus, O'Donovan's decision was supported by some evidence.

Lindell next contends that he was denied the ability to present evidence because the DOC did not produce a full transcript or recording of the PREA call that formed the basis for the conduct report, and because O'Donovan denied Lindell's request to call Searls as a witness. ECF No. 143 at 16. The fact that a full transcript or recording of Lindell's PREA call was not available did not violate due process. The recording of Lindell's call to the PREA hotline was unavailable because such calls were deleted after they were retrieved and summarized. Lindell does not submit evidence showing that any defendant could have preserved the PREA recording or that a defendant destroyed the

11

recording in bad faith. *See Lewis v. McLean*, 941 F.3d 886, 892 (7th Cir. 2019) (describing elements of spoliation of evidence). And because neither a recording nor a transcript of the call existed at the time of the hearing, the defendants could not have deprived the plaintiff of due process by failing to produce either.

Regarding Searls, he was excluded as a witness on the ground that his testimony would have been cumulative of other evidence and would have prolonged the hearing. *See* ECF No. 121 at p. 9 of 13 (citing Wis. Admin. Code § DOC 303.81(3)(c)). Prison disciplinary officials may deny witness requests that are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d at 666 (7th Cir. 2003). And here, Searls' testimony would have been cumulative. Searls deemed Lindell's complaint unfounded because Lindell refused to be interviewed about his allegations. Searls' report indicated that Lindell refused to be interviewed because he did not want to submit to a strip search. ECF 120-1 at p. 1 of 12. Searls' report was thus consistent with Lindell's own testimony, and Lindell was able to argue at the hearing that he should not have had to be strip searched to be interviewed about his complaint. Thus, Searls' absence from the hearing did not deprive Lindell of due process.

Third, Lindell contends that he was denied an impartial decisionmaker. Adjudicators are entitled to a presumption of honesty and integrity, and the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666 (citations omitted). Lindell contends that because Meli, his accuser, outranked O'Donovan, O'Donovan could not have been impartial. But courts have rejected the suggestion that hearing officers are biased when they are within the DOC chain of command and thus could be disciplined for their decisions. *See Thurston v. Pallito*, No. 5:13–cv–316, 2015 WL 1097377, at *13

(D. Vt. Jan. 13, 2015); *Williams v. Benson*, No. 11–1837, 2012 WL 4449658, at *11 (D. Minn. June 27, 2012). The due-process requirement of impartiality is generally satisfied so long as the hearing officer was not involved in the events that gave rise to the conduct report. *See Piggie*, 342 F.3d at 666–67. Here, it is undisputed that O'Donovan was not involved in the events that led Meli to accuse Lindell of lying about staff, and therefore the requirement of impartiality was satisfied.

Fourth, Lindell contends that he was denied a written decision and right to appeal. ECF No. 143 at p. 18. It is undisputed that Lindell did not receive a copy of O'Donovan's decision immediately after he prepared it on November 26, 2013. But the defendants provided a copy of the decision to the plaintiff during discovery. Notably, the written decision that was prepared has served the purpose of allowing a court to review the reasons for the discipline. *See Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 565). Lindell contends that not receiving a copy of the decision immediately after the hearing prejudiced his ability to appeal the disciplinary decision to the warden. *See* ECF No. 163 at 7–8. However, the administrative rules in effect at the time the discipline was imposed permitted Lindell to appeal within 10 days of the hearing, even if he did not receive a copy of the decision within that time. *See* Wis. Admin Code § DOC 303.76(7)(a) (2013) (permitting appeal "[a]ny time within 10 days after either a due process hearing or after the inmate receives a copy of the decision, whichever is later"). Indeed, Lindell contends that he actually commenced an appeal prior to receiving a copy of the written decision. *See* Pl. PFOF ¶ 13. To be sure, Lindell also contends that the warden never decided the appeal, *see id.*, but there is no evidence that

this was because Lindell did not receive a copy of O'Donovan's decision.[3] Thus, Lindell has not shown that he was prejudiced by the failure to provide him with a copy of the written decision immediately after O'Donovan prepared it. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (harmless error applies in prison disciplinary context).

In his response to the defendants' motion for summary judgment, Lindell raises a fifth due-process issue, which is that he was denied advance notice of the charge. *See* ECF No. 163 at 5. Due process requires that an inmate receive at least 24 hours' advance written notice of a disciplinary charge so that he is informed of the charge and able to prepare a defense. *Wolff*, 418 U.S. at 564. Here, Lindell does not dispute that he received at least 24 hours' written notice that he was being charged with lying about staff based on his PREA complaint. Instead, he contends that the charge did not sufficiently inform him of the nature of the alleged lie. According to Lindell, the written notice charged him with lying about Captain Olson and did not provide notice that he was also being charged with lying about any other staff member, such as Schouten. But Lindell was never charged with lying about multiple staff members. He was charged with lying about Olson, and the advanced notice of the charge made that clear. *See* ECF No. 120-1 at 1–2. Lindell apparently raises the notice issue because I observed in my summary-judgment decision on the retaliation claims that his allegations of attempted sexual abuse would have been false even if they had been directed at Schouten rather than Olson. *See* ECF No. 158 at

---

[3] To the extent that Lindell claims that the warden's failure to decide the appeal violated his due-process rights, I would reject the claim for two reasons: (1) the warden is not a defendant, and (2) in the prison disciplinary context, due process does not require that an inmate be afforded an administrative appeal. *See Blair v. Thompson*, No. 5:16-CV-P35-TBR, 2017 WL 161638, at *2 (W.D. Ky. Jan. 13, 2017) (collecting cases).

14

15–18. But my observation does not imply that the notice of the charge was inadequate. And because the notice described the conduct that formed the basis for the disciplinary charge along with the prison rule allegedly violated, the requirements of due process were satisfied.

For the above reasons, I will deny Lindell's motion for summary judgment and grant summary judgment for the defendants on the due-process claims.[4]

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 142) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' supplemental motion for summary judgment (ECF No. 159) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file sur-response brief (ECF No. 166) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to clarify (ECF No. 167) is **DENIED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rules of Appellate Procedure 3 & 4. This court may extend this deadline if a party timely requests an

---

[4] Because the defendants are entitled to summary judgment on the ground that Lindell has not shown that they violated the Constitution, I do not separately consider their argument that they are entitled to qualified immunity.

extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend either of these deadlines. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 4th day of August, 2021.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge